UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **LAWRENCE BELL** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| **JANET MAY AND THE HARRIS** | § | JURY DEMANDED |
| **CENTER FOR MENTAL** | § | |
| **HEALTH AND IDD** | § | |
| | § | |
| *Defendants.* | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND REQUEST FOR JURY TRIAL**

**TO THE HONORABLE DISTRICT COURT JUDGE AND JURY:**

This suit is brought by Plaintiff, Lawrence Bell, against defendants Janet May and The Harris Center for Mental Health and IDD ("Harris Center") for the following reasons:

## I.
## INTRODUCTION

1. This suit arises out of deliberate race discrimination, as well as racially motivated retaliation and practices perpetrated by Defendants against Plaintiff. Defendant Harris Center acted under color of law to cause the harm and damages alleged in this suit. Defendants' conduct variously violated the First Amendment to the Constitution to the United States of America, Title VII of the Civil Rights Act of 1964, 42 U.S.C. 1983, including the rights protected in 42 U.S.C. 1981.

## II.
## PARTIES

2. Plaintiff Lawrence Bell is a Texas resident who resides in Houston, Harris County, Texas.

3. Defendant, Janet May is a resident of Harris County and may be served with process at 1010 Rochow Street, Houston, TX 77019.

4. Defendant, The Harris Center for Mental Health and IDD, is a public health institution situated in Harris County, Texas. This defendant may be served with process by serving its Chief Executive Officer, Wayne Young, located at 9401 Southwest Freeway, Houston TX 77074, or wherever he may be found.

### III.
### JURISDICTION, VENUE AND WAIVER OF IMMUNITY ALLEGATIONS

5. Plaintiff's Title VII claims against The Harris Center are not barred by sovereign immunity because The Harris Center is an "employer" under the act and receives federal funding, including grant funds.[1] By accepting federal funds, The Harris Center expressly agreed to waive its sovereign immunity as to Plaintiff's racial and sex discrimination and retaliation claims asserted in this case. *Gruver v. La. Bd. of Supervisors for the La. State Univ. Agric. & Mech. Coll.*, 959 F.3d 178 (5th Cir. 2020). Specifically, pursuant to 42 U.S.C. § 2007d entities that accept federal funding are prohibited from discriminating in violation of Title VII and other legal provisions. And, pursuant to 42 U.S.C. 2007d-7(a)(1) the Defendant does not enjoy immunity from Plaintiff's racial discrimination and retaliation claims asserted in this case.

6. The Fifth Circuit recently reaffirmed the bedrock principal that entities accepting federal funds as alleged in this case waive their sovereign immunity. *See Gruver v. La. Bd. of Supervisors for the La. State Univ. Agric. & Mech. Coll.* (Civil Action No. 19-30670 (5th Cir. 2020) Title VII of the Civil Rights Act of 1964 also has been held to waive Defendants' immunity

---

[1] *See* Exhibit 1, 2018/2019 The Harris Center Financial Report that shows the receipt of federal funds.

defenses.  42 U.S.C. § 2000e-16 et seq.; *Library of Cong. v. Shaw*, 478 U.S. 310, 319, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986) (abrogated by statute on other grounds

7. Venue is also proper in the Southern District of Texas because the events complained about in this case substantially occurred in this county and within this District and, specifically, the Houston Division. Additionally, one or more of the Defendants sued in this case resides in and/or has its principal place of business in this county and District. Finally, Plaintiff has satisfied all conditions precedent to bring the claims asserted in this case, including obtaining a Right to Sue letter from the EEOC.[2]

## IV.
## NOTICE ALLEGATIONS

8. Plaintiff is the victim of race discrimination and retaliation from The Harris Center and Janet May.  Since 2017, Plaintiff was the Director of the Facility Services Department at The Harris Center for Mental Health and IDD where he aptly performed his duties and excelled at the position.

9. After two years of holding the position as Director without issue, things began to change in 2019. During the early part of 2019, the country became inundated with an increasing stream of racial incidents that negatively impacted Blacks in this country.  With racial tensions and animus becoming a major cultural talking point in the United States, Plaintiff reflected on his personal experiences at the Harris Center.  When Plaintiff first arrived at the Harris Center (April 2017), he was told by some individuals that they were surprised at his hiring and that prior to him, there were no blacks hired in the Facility Services Department.  Coupled with the fact that at Plaintiff's first board meeting (Spring 2017) one of the board members expressed their displeasure

---

[2] *See* Exhibit 2, Right to Sue Letter.

with how Black Americans were treated at the Harris Center, Plaintiff took it upon himself in early 2019 to request that the Harris Center bring in someone to discuss the concerns of black employees at the organization and the effects of stereotyping, both consciously and subconsciously.[3] Little did Plaintiff know that this would lead to his demise at the Harris Center.

10. The request was made to various individuals in leadership roles at the Harris Center in the early part of 2019, including the director of Human Resources, Charlotte Simmons, a white female. Plaintiff also brought up the issue at several administrative staff meetings where Harris Center leadership was present. These staff meetings also included Scott Rule, a white male, and Plaintiff's supervisor. Plaintiff's request went unanswered for several weeks. Whenever Plaintiff would inquire about the status of the request, he would be met with defensive responses and informed that someone would get back to him. After weeks of silence, Plaintiff was finally informed that The Harris Center had found someone for him to meet with to discuss these issues. This individual was Defendant Janet May, a white female and an HR specialist from Houston Community College.[4] Upon Ms. May's onboarding, rather than meeting to discuss the concerns of black employees at the Harris Center, Plaintiff was shocked to find out Janet May would be looking into Plaintiff's personal HR file and interviewing him about his employment.

11. It was around this same time that Plaintiff was ambushed with two Employee Complaint Forms filed on March 28, 2019 and April 1, 2019, respectively. These complaints, both filed by white female suboordinates, purported to question Mr. Bell's communication and

---

[3] *See* Charles R. Lawrence III, The Id, the Ego, and Equal Protection: Reckoning with Unconscious Racism, 39 STAN. L. REV. 317, 322-23 (1987) (demonstrating that subconscious racist and sexist stereotypes can affect conscious processing of information); David Benjamin Oppenheimer, Negligent Discrimination, 141 U. PA. L. REV. 899, 903 (1993) (finding through psychological surveys that although the vast majority of subjects agreed with racial and sexual equality in the workplace, many subjects exhibited a high degree of adherence to discriminatory stereotypes).

[4] Alarmingly, Janet May is a named defendant in a lawsuit currently pending in the United States District Court for the Southern District of Texas where it is alleged that she is one of the main culprits in an employee displacement plan focused on terminating, demoting, and/or retaliating against Black employees at HCC.

leadership abilities, attributes that had been unquestioned up until then. It was becoming clear to Plaintiff that his decision to speak up about the treatment of Black employees at the Harris Center had now put a target on his back and Defendant May had been brought in as the proverbial hatchet man.

12. Upon information and belief, the two white females under Plaintiff's supervision who filed the complaints, Karen Hurst and Sarah Harper, were coached by Charlotte Simmons (HR Director) and possibly others and allowed to file bogus complaints against Plaintiff. Plaintiff was told not to address the complaint with either of the allegedly grieved parties. Plaintiff discerned that the complaints were attempts to pad Mr. Bell's employment file to ripen him for termination.[5] The padding of his file coupled with the investigation being completed by Defendant May were all the beginnings of a plan to have Plaintiff terminated as his insistence on addressing the concerns of black employees like himself at The Harris Center had become bothersome to Plaintiff's supervisors and upper management.

13. Following the conclusion of Defendant May's investigation, Plaintiff was informed that May found no compelling reason or need to address the concerns of any of the black employees, including Mr. Bell, at the Harris Center. Rather, in October of 2019 at Plaintiff's annual performance review with Sean Kim and Scott Rule and based upon Defendant May's findings, Plaintiff was asked by Scott Rule to either resign or be terminated. Plaintiff was then summarily terminated on October 9, 2019.

14. After his termination, Plaintiff was informed by an HR representative that the performance review process was not completed in accordance with Harris Center policy and that it was unusual for him to be terminated in such a manner. The HR representative stated that

---

[5] Padding is a term used when an employer manufactures a false or exaggerated claim against an employee to "pad" their personnel file and use that "padding" later as grounds to support demotion or termination of the employee.

Plaintiff was not provided the option of coaching and/or corrective measures prior to termination, which was afforded to other non-black employees.

## VI.
## CAUSES OF ACTION

### VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHT TO PETITION GOVERNMENT WHICH IS ENFORCEABLE UNDER 42 U.S.C. § 1983

15.     Plaintiff alleges the Defendants retaliated against him for exercising his non-job related right to free speech to report suspected discriminatory practices at the Harris Center. The First Amendment guarantees to Plaintiff the right to free speech and the right to petition the government. After two years of holding the Director of the Facility Services Department position without issue, it was only after Plaintiff voiced his concern about the treatment of black employees at the Harris Center that his abilities were called into question. Defendants ultimate decision to terminate Mr. Bell from his employment is clear evidence of retaliatory conduct. Pursuant to 42 U.S.C. § 1983 Plaintiff seeks damages, compensatory and punitive, which were caused by such abridgment of his rights.

### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964[6]

16.     Defendant Harris Center is an employer as defined in 42 U.S.C. §2000e (b) of Title VII.  At all times material to the claims asserted herein, this Defendant employed more than 500 employees and Plaintiff was over forty (40) years of age.

17.     Plaintiff has timely and fully complied with prerequisites for administrative exhaustion required under Title VII.  Thus, all conditions precedent to bring this lawsuit have been performed or have otherwise been satisfied.

---

[6] Plaintiff simultaneously pursues and alleges identical claims in this suit under the Texas Commission on Human Rights Act. *See* Chapter 21 of the Texas Labor Code. *See also Alamo Heights ISD v. Clark*, 544 S.W.3d 755, (Tex 2018) (TCHRA waives governmental immunity)

18. The conduct of Defendants under color of law violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2, et seq., the Age Discrimination in Employment Act and the Older Worker Benefit Protection Act, in that Defendants discriminated and retaliated against Plaintiff because of his race, and/or age. Defendants' discriminatory and retaliatory conduct has caused Plaintiff damages by way of lost wages and benefits, stigma damages, mental anguish, emotional distress, humiliation, inconvenience, loss of enjoyment of life and other pecuniary and non-pecuniary compensatory damages he has suffered in the past and, in reasonable probability, will suffer in the future, all in an amount in excess of $200,000.00. Reinstatement is not feasible and has already been rejected by Defendant Harris Center. Defendants' conduct was committed with intentionality, malice, and/or reckless indifference to Plaintiff's rights and, as such, justifies an award of punitive damages.

## CHAPTER 21 OF THE TEXAS LABOR CODE

19. Defendant the Harris Center is an employer as defined in Chapter 21 of the Texas Labor Code. At all times, material to the claims asserted herein employed more than 500 employees. The Harris Center was aware that Plaintiff was a member of a protected racial class.

20. Plaintiff has timely, fully, and virtually complied with prerequisites for administrative exhaustion required under Chapter 21. Thus, all conditions precedent to bring this cause of action have been performed or have otherwise been satisfied.

21. The conduct of the Harris Center under color of law violated Chapter 21 of the Texas Labor Code in that the College discriminated against Plaintiff because of his race. The Harris Center created pretextual justifications for specific actions against the Plaintiff.

22. Plaintiff was also retaliated against in violation of Chapter 21. Specifically, Plaintiff engaged in protected activity by complaining about the treatment of Blacks at the Harris

Center and requested a consultant to come in and discuss matters with the organization. The Harris Center acted adversely against Plaintiff under color of law due to this protected activity and ultimately terminated him. A reasonable employee would have found the termination materially adverse, and the termination would have dissuaded a reasonable worker from engaging in the protected activity.

23. As a result of his protected status and activities, Plaintiff suffered adverse employment actions, including but not limited to being investigated, harassed, disciplined, and ultimately, terminated from his employment.

24. The Harris Center's discriminatory and retaliatory conduct has caused Plaintiff damages in the form of lost wages and benefits, stigma damages, mental anguish, emotional distress, humiliation, inconvenience, loss of enjoyment of life, and other pecuniary and non-pecuniary compensatory damages he has suffered in the past and, in reasonable probability, will suffer in the future, all in an amount in excess of $200,000.00, along with punitive damages in at least an equal minimum amount. Reinstatement is not feasible and has already been rejected or not credibly offered by the Harris Center. The Harris Center's conduct was committed with intentionality, malice, consciousness, and/or reckless indifference to Plaintiffs' rights and, as such, justifies an award of punitive damages which Plaintiff now.

## NEGLIGENCE

25. Defendant May was negligent as she failed to operate under the standards of care and conduct as would be expected from a reasonable and prudent human resources director or consultant. Despite the auspice that Janet May was brought in to address Plaintiff's concerns about the treatment of himself and other black employees at the Harris Center, May, through her own racial animus, used her position to ripen Bell for termination. May's determination that there was

no compelling reason or need to address the concerns of any of the black employees was not made in good faith nor under such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances. As previously mentioned, Janet May is a named defendant in a lawsuit currently pending in the United States District Court for the Southern District of Texas where it is alleged that she is one of the main culprits in an employee displacement plan focused on terminating, demoting, and/or retaliating against Black employees at Houston Community College. Bell's ultimate termination following May's investigation coupled with the pending claims against May suggest a negligent mishandling of Bell's discrimination claims after he reported his concerns to the Harris Center.

## VII.
## ATTORNEY'S FEES

26. Defendants' actions and conduct as described herein and the resulting damages and loss to Plaintiff has necessitated Plaintiff retaining the services of The Hall Law Group, PLLC, located at 530 Lovett Boulevard, Houston, Texas 77006, to investigate, initiate, and prosecute the claims in this lawsuit. Plaintiff seeks recovery of reasonable and necessary attorney's fees under 42 U.S.C. § 1988, and any other applicable law or statute, as well as expenses, court costs, and expert witness fees.

## PRAYER AND DAMAGES

27. This Court has jurisdiction over the federal and related state law claims asserted in this case. Defendants' immunity has been expressly waived by the laws referenced above, and because the Harris Center has accepted federal grant funds, the Defendant's immunity from suit has been waived. *Gruver v. La. Bd. of Supervisors for the La. State Univ. Agric. & Mech. Coll., 959 F.3d 178* (5th Cir. 2020) (governmental entity which accepts federal funds expressly waives its sovereign immunity as to discrimination claims). Accordingly, Plaintiff asks that all Defendants

be served with process, and judgment be entered for Plaintiff, against Defendants, and he recover his compensatory and punitive damages up to $1,000,000, including lost past and future lost income, lost health, pension, and retirement benefits, mental anguish damages, attorney's fees, costs and such other and further relief to which he may be entitled.

Respectfully submitted,

**THE HALL LAW GROUP, PLLC**

*/s/ Benjamin L. Hall, III*
**Benjamin L. Hall, III**
State Bar No. 08743745
Federal Bar No. 3670
Ryan Finnegan
State Bar No. 24119322
530 Lovett Blvd.
Houston, Texas  77006
Telephone:  (713) 942-9600
Facsimile:  (713) 942-9566
bhall@thlf.us